IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA MACRITO, | ) | |
| | ) | 09 C 7371 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EVENTS EXPOSITION SERVICES INC. | ) | |
| and KEVIN GROENHOF, | ) | Hon. Charles R. Norgle |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Jessica Macrito ("Macrito") sues Defendant Events Exposition Services, Inc. ("Events") and Kevin Groenhof ("Groenhof") for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and various state laws. Events moves for summary judgment on the Title VII claim, which Macrito opposes. For the following reasons, summary judgment is granted as to the Title VII claim. Jurisdiction over the supplemental state claims is relinquished to the Illinois courts pursuant to 28 U.S.C. § 1367(c)(3). Events' motion to strike Macrito's affidavit is denied as moot.

**I. INTRODUCTION**

**A. Facts**

Events is a trade show and special event contractor in the business of installing and dismantling sets and exhibits for theatre shows and special events. Def.'s Local Rule 56.1(a) Statement ¶ 9-10. Events has a staff of six to eleven regular employees who work primarily out of an office in East Dundee, Illinois. Id. ¶ 12. For additional labor, Events

1

contracts with at least three local unions, which provide Events with referral workers for its projects. Id. ¶ 14. While Events can reject a worker referred by a union, it cannot control who is referred or when they are referred. Id. ¶ 19. A typical job with Events lasts one to two days. Id. ¶ 16. After a job is complete, the referral worker leaves the employment of Events and is placed back into the union hiring pool, where he is free to be placed with other employers. Id. ¶ 17.

Events hired Macrito as an office assistant in February 2008 and she resigned approximately eight weeks thereafter. Id. ¶ 7-8. Among other things, Macrito alleges that Groenhof, a supervisor, and other employees made offensive sexual statements, including requesting that she have sex with them during and after work. Compl. ¶ 14. Macrito further alleges that, on April 23, 2008, Groenhof "removed his penis from his pants and while watching pornography on his computer masturbated to ejaculation in front of Plaintiff while she was pinned in her office and unable to exit." Id. Macrito reported the incident to Events and to the police and Groenhof was criminally charged with indecent exposure and disorderly conduct and convicted in the Circuit Court of Kane County. Compl. ¶ 20.

The sole issue before the Court on summary judgment is whether Events qualifies as an "employer" for purposes of liability under Title VII. Macrito's argument turns on the nature of the relationship between Events and a company known as Events Electrical, Inc. ("Events Electrical"). Macrito sets forth facts on this issue in her Local Rule 56.1(b) Statement, which she supports with her own affidavit.

The following facts are not disputed. Events Electrical was incorporated in 1992 and Events was incorporated in 1995, dissolved in 1998, and reincorporated in 2004.

Pl.'s Local Rule 56.1(b) Statement ¶¶ 6, 8. Patrick Tervin served as the president of both Events and Events Electrical, and payroll for both companies was prepared by Teresa Tobin. Id. ¶¶ 4, 7, 9. In 2008, employees of both Events and Events Electrical received a memorandum from Patrick Tervin stating that payroll for both companies was changing to a bi-weekly schedule. Id. ¶ 5. Events describes Events Electrical as its "sister company" on its website. Id. ¶ 11.

Macrito further alleges the following facts, which Events disputes. In 2008, Events and Events Electrical operated their business out of the same address in East Dundee, Illinois and both companies received telephone calls at that location. Id. ¶¶ 1-2. Whenever Events was hired for a new trade show, convention, or other special event, Events Electrical would perform the electrical work. Id. ¶ 3. Events Electrical employed between five and nine full-time employees who performed work on Events' projects. Id. ¶ 12. Events would invoice and bill clients for work performed by Events Electrical. Id. ¶ 15. Finally, employees for both Events and Events Electrical worked "interchangeably" and clients had no knowledge of whether Events or Events Electrical employees were performing specific tasks during projects. Id. ¶ 17.

Disputing the above allegations, Events sets forth the following facts. Events and Events Electrical never worked together on the same trade show and Events Electrical did not employ anyone who worked on Events' projects. Def.'s Resp. to Pl.'s Local Rule 56.1(b) Statement ¶¶ 3, 12. When Events produced a trade show or event, it contracted for electrical services not with Events Electrical but with the venue hosting the show or event. Id. ¶ 14. Events Electrical operated its business out of the Sheraton Chicago Hotel, 301 E. North Water Street, Chicago, Illinois, 60611 ("Sheraton"), not out of

3

Events' office in East Dundee, Illinois. Id. ¶ 1. While Events has never produced a trade show or event at the Sheraton, Events Electrical was the sole provider of electrical services for trade shows at the Sheraton and has never provided electrical services anywhere other than the Sheraton. Id. At no time during 2008 did Events share a phone number, mailing address, fax number, or email address with Events Electrical, nor did it ever receive payments for services performed by Events Electrical. Id. ¶¶ 2, 16. Finally, each corporation maintained separate bank accounts and tax identification numbers, and all invoices and bills for Events Electrical work were completed by Events Electrical employees at the Sheraton. Id. ¶ 15.

Events has filed a motion to strike Macrito's affidavit for, among other things, her lack of personal knowledge under Rule 56(c)(4). The Court need not reach the merits of Events' motion to strike. As set forth below, putting aside the objection to Macrito's affidavit and accepting its contents as true, it does not support the argument that Events and Event Electrical constitute a single employer for purposes of Title VII. Events' motion to strike is therefore denied as moot.

**B. Procedural History**

On August 20, 2008, Macrito filed a charge of discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission. On September 11, 2009, she received a notice of right to sue letter and, on November 24, 2009, filed the instant five-count Complaint. Count I seeks redress for sexual harassment in violation of Title VII. The remaining counts are state claims for assault and battery (Count II), intentional infliction of emotional distress (Count III), false imprisonment (Count IV), and violation of the Illinois Gender Violence Act, 740 ILCS 82/1, *et seq.*

(Count V). Events' motion to dismiss the Complaint pursuant to Rule 12(b)(6) was denied on December 2, 2010. Events now moves for summary judgment on the Title VII claim. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, the non-moving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Ptasznik v. St. Joseph Hosp., 464 F.3d 691, 694 (7th Cir. 2006). The Court views the record and draws all reasonable inferences in the light most favorable to the non-moving party. Zerante v. DeLuca, 555 F.3d 582, 584 (7th Cir. 2009). The Court does not "make credibility determinations [or] weigh the evidence." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citation omitted).

To survive a motion for summary judgment, the non-moving party must identify "with reasonable particularity" the evidence in the record that shows a genuine triable dispute of material fact. Hemsworth, II v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); Murphy v. ITT Technical Servs., Inc., 176 F.3d 934, 936 (7th Cir. 1999). The movant will prevail where the record as a whole demonstrates that "a rational trier of fact could not find for the non-moving party." Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 994 (7th Cir. 2003). Conclusory allegations will not defeat a motion for summary judgment. See Thomas v. Christ Hosp. & Med. Ctr., 328 F.3d 890, 893-94 (7th Cir. 2003).

## B. Events' Motion for Summary Judgment

Events argues that it is entitled to summary judgment because it is a small business not covered as a Title VII "employer." Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). To determine the number of employees an employer has in each week of a calendar year, the United States Supreme Court has endorsed the payroll method as set forth in Walters v. Metropolitan Educational Enterprises, Inc., 519 U.S. 202, 205 (1997). Under the payroll method, Macrito must "introduce evidence of defendant's payroll records to prove that fifteen or more employees appeared on the employer's payroll for twenty or more calendar weeks in either the year of the alleged violation or the preceding year." Mizwicki v. Helwig, 196 F.3d 828, 831 (7th Cir. 1999). As the year of the alleged violation is 2008, the relevant payroll years are 2007 and 2008.

Events argues that it is not an "employer" under Title VII because it did not employ fifteen or more employees for twenty or more calendar weeks in 2007 or 2008. Macrito does not dispute this. Instead, she argues that she should be allowed to count the employees of Events Electrical toward the fifteen employee minimum, which would raise the number of employees above Title VII's threshold.

"There are three situations in which the policy behind the exemption of the tiny employer is vitiated by the presence of an affiliated corporation." Papa v. Katy Indus., Inc., 166 F.3d 937, 940 (7th Cir. 1999). As the Seventh Circuit explained, employees may be aggregated only if a plaintiff can show: (1) that that traditional conditions for

6

"piercing the [corporate] veil" are present; (2) that the enterprise split itself into multiple corporations "for the express purpose of avoiding liability under the discrimination laws"; or (3) that the parent corporation might have directed the discriminatory act, practice, or policy of which the plaintiff is complaining. Id. at 940-41. Macrito argues that both the first and second situations warrant aggregation.

With respect to piercing the veil, Macrito must show two things: first, "there must be such unity of interest and ownership [between Events and Events Electrical] that the separate personalities . . . no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." Worth v. Tyer, 276 F.3d 249, 260 (7th Cir. 2001) (quotation omitted). "To determine whether there is sufficient 'unity of interest and ownership' between two corporations, Illinois focuses on four factors: '(1) the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another as its own.'" Hystro Products, Inc. v. MNP Corp., 18 F.3d 1384, 1389 (7th Cir. 1994) (quoting Van Dorn Co. v. Future Chem. & Oil Corp., 753 F.2d 565, 570 (7th Cir. 1985) (interpreting Illinois law)).

To show unity of interest or ownership, Macrito points to evidence of the overlap between Events and Events Electrical: the two companies share a president and payroll coordinator, operate and receive phone calls out of the same address, work together on special events, and hold themselves out as "sister" companies on the internet. According to Events, this evidence does not support Macrito's position because Papa explicitly

7

condoned this type of overlap in rejecting the application of an integration analysis in Title VII aggregation cases. Events is correct.

In Papa, the Seventh Circuit explained that:

> The claim that a group of affiliated corporations is 'integrated,' . . . not only is vague, but is unrelated to . . . the policy behind the exemption for employers that have very few employees. Firms too tiny to achieve the realizable economies of scale or scope in their industry will go under unless they can integrate some of their operations with those of other companies, whether by contract or by ownership . . . . The corporate veil is pierced, when it is pierced, not because the corporate group is integrated . . . [but] because it has neglected forms intended to protect creditors from being confused about whom they can look to for the payment of their claims.

Papa, 166 F.3d at 942-43. Applying this reasoning in factually similar cases, courts in this District have declined to find veil piercing for purposes of Title VII aggregation. See, e.g., Wilson v. Comtrust LLC, 249 F. Supp. 2d 993, 997-98 (N.D. Ill. 2003) (finding no Title VII aggregation when multiple companies were created by the same person, refer to each other jointly on letterhead, use the same accounting firm, and share employees, a supervisor, and an office building); Walker v. Macra Const. Inc., No. 02 C 3285, 2003 WL 297529, at *4 (N.D. Ill. Feb. 11, 2003) (finding no Title VII aggregation when two companies operate out of the same building, are owned by members of the same family, share a business telephone number, and employ the same person to answer telephone calls and prepare payroll and quarterly reports); Atkins v. JAD Hosiery, Inc., No. 99 C 4055, 2000 WL 988534, at *3 (N.D. Ill. July 17, 2000) (finding no Title VII aggregation when the entities "were interrelated in that they all sold and marketed the same product, shared a corporate logo, shared directors and officers, and conducted some inter-office business."). As in Walker, Macrito "points to none of the usual [unity of ownership] symptoms such as failure to maintain adequate corporate records, the commingling of

funds or assets, or undercapitalization." Walker, 2003 WL 297529, at *4. Events, by contrast, submits evidence showing that the two corporations were separately incorporated, filed separate annual statements, kept separate bank accounts, and had separate federal tax identification numbers. Macrito has not set forth specific facts showing that there is a genuine issue with respect to the unity of interest prong.

Macrito also fails to show how the alleged integration between Events and Events Electrical might promote injustice or perpetuate fraud on creditors. See Walker, 2003 WL 297529, at *4 (citing Van Dorn, 753 F.2d at 570). Under the "promote injustice" test, "some element of unfairness, something akin to fraud or deception, or the existence of a compelling public interest must be present in order to disregard the corporate fiction." Hystro Products, Inc. v. MNP Corp., 18 F.3d 1384, 1390 (7th Cir. 1994) (quotation omitted). While Macrito states that Events would bill clients for work performed by Events Electrical and that Events' clients had no knowledge as to whether Events or Events Electrical employees were performing various tasks, these client-based assertions are not relevant to the issue of creditor confusion or fraud. "The doctrine of veil piercing is intended to protect creditors, not customer-debtors, from being confused about which entity the creditor may pursue for outstanding claims." Atkins, 2000 WL 988534, at *3 (citing Papa, 166 F.3d at 943). In sum, Macrito's testimony and documentary evidence "establish nothing other than the fact that the entities were interrelated." Id. As such, the Court concludes that there is no basis for piercing the corporate veil, and therefore declines to aggregate the number of employees on this basis.

As to the second Papa situation, Macrito must establish that Events and Events Electrical split themselves into two, each with fewer than the statutory minimum number

9

of employees, "for the express purposes of avoiding liability under the discrimination laws." Papa, 166 F.3d at 941. Macrito presents no evidence that Events diverted employees with the intent of avoiding Title VII liability. To the contrary, it is undisputed that "each of the entities was formed independently, at different times (well prior to Plaintiff's employment), and for [different] purpose[s]." Atkins, 2000 WL 988534, at *4.

Macrito's reliance on Drebing v. Provo Group, Inc., 519 F. Supp. 2d 811 (N.D. Ill. 2007) is unavailing. The Drebing plaintiff survived summary judgment because she presented evidence of the defendant's president's "two purported admissions that he structures his businesses to keep them small and that he understands that he does not have to keep jobs available for women who take maternity leave." Drebing, 519 F. Supp. 2d at 830. Macrito presents no such evidence in this case. In sum, the facts as set forth by Macrito are not enough for a jury to conclude that the corporate veil should be pierced or that Events intentionally diverted employees in order to avoid Title VII liability. Events' motion for summary judgment on the Title VII claim is therefore granted.

Events also requests that the Court relinquish jurisdiction over the state law claims (Counts II –V) pursuant to 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, a district court should relinquish jurisdiction over pendant state-law claims unless the statute of limitations has run, substantial judicial resources have already been committed to resolving the pendant claims, or it is absolutely clear how the claims will be decided." Zuege v. Knoch, 423 F. App'x 621, 623 (7th Cir. 2011) (citing 28 U.S.C. § 1367(c)(3)); Sharp Elec. Corp. v. Metro. Life Ins. Co., 578 F.3d 505, 514-15 (7th Cir. 2009)). None of these factors apply here. First, the statute of limitations for the Illinois Gender Violence Act claim as alleged in this case is seven years, 740 ILCS 82/20,

and has therefore not expired. Furthermore, with respect to all of the state claims, the supplemental jurisdiction statute contains a thirty day tolling provision, 28 U.S.C. § 1367(d), and Illinois law gives Macrito one year from the dismissal of her claim to refile in state court. See 735 ILCS 5/13-217; see also Davis v. Cook Cty., 534 F.3d 650, 654 (7th Cir. 2008). Second, substantial judicial resources have not been expended – resolution of the Title VII "employer" issue on summary judgment did not give the Court the opportunity to address the facts or legal issues relevant to the state claims. Finally, because the Court's only interaction with the state claims was the denial of a motion to dismiss filed in April 2010, the Court is not prepared to say, over one year later, that the proper resolution of the state claims is "absolutely clear." The Court therefore relinquishes jurisdiction over Counts II – V.

## III. CONCLUSION

For the foregoing reasons, Events' motion for summary judgment on Count I is granted and jurisdiction over the supplemental state law claims (Counts II – V) is relinquished to the state court pursuant to § 1367(c)(3). Events' motion to strike Macrito's affidavit is denied as moot.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: October 21, 2011